## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Jack & Joe's Franchising, Inc. /d/b/a Squeegee Squad; Jack & Joe's Management Company, <br><br> Plaintiffs, <br><br> vs. <br><br> Eric Bernardin, EB Window Cleaning LLC, <br><br> Defendants. | Case No. 0:25-cv-2776 <br><br><br><br><br> **COMPLAINT** |

---

Plaintiffs Jack & Joe's Franchising, Inc. d/b/a Squeegee Squad ("JJFI") and Jack & Joe's Management Company ("JJMC") (JJFI and JJMC may be referred to as "Squeegee Squad") for its Complaint against Defendants Eric Bernardin ("Bernardin") and EB Window Cleaning LLC ("EB Window Cleaning") (Bernardin and EB Window Cleaning may be referred to as "Defendants"), allege as follows:

1.      This is an action seeking immediate, preliminary, and permanent injunctive relief enjoining Defendants from ongoing acts of business defamation, enforcing Defendants' covenants not to compete, enjoining Defendants to transfer phone numbers, enforcing other obligations in the Franchise Agreement between the parties, and enjoining Defendants' trademark infringement under the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051, *et seq.*

2.      JJFI is the franchisor of businesses that provide window cleaning and other building and residential cleaning and maintenance services, using the registered trademark Squeegee Squad®, as well as other proprietary technology, products, training, and standards and specifications for operation of franchised businesses (collectively, the "Squeegee Squad System").

1

3.      JJMC is the owner of the Marks and licenses the Marks for use in connection with the Squeegee Squad franchised businesses.

4.      Defendant Eric Bernardin is a former Squeegee Squad franchisee, pursuant to a Franchise Agreement, together with all addendums and exhibits attached thereto, dated October 13, 2023. A true and correct copy of the Franchise Agreement is attached hereto as **Exhibit A**.

5.      Defendant EB Window Cleaning LLC is a company that is wholly owned by Eric Bernardin and is a party to the Franchise Agreement.

6.      On June 13, 2025, Squeegee Squad terminated the Franchise Agreement with Defendants after Defendants failed to produce material financial information, and made material omissions about financial information, in response to repeated audit requests.

7.      Squeegee Squad has since learned that Defendants are competing with Squeegee Squad, diverting actual or prospective customers, and using and misusing without authorization the Squeegee Squad® Marks and Confidential Information. On information and belief, Defendants are operating a competing business from the same location, serving the same customers, and providing the same services.

8.      Defendants are also actively defaming the Squeegee Squad business and tarnishing the trademarks by coordinating a campaign of false and negative business reviews on Google Reviews (among other possible sites) that bear no relation to jobs actually performed by Squeegee Squad.

9.      Squeegee Squad, therefore, seeks: (a) a preliminary and permanent injunction prohibiting Defendants and those acting in concert and participation with them from operating a competing business in violation of the noncompete and non-solicitation provisions of the Franchise Agreement; (b) a preliminary and permanent injunction prohibiting Defendants and those acting

in concert and participation with them from defaming Squeegee Squad's business; (c) a preliminary and permanent injunction enjoining Defendants' trademark infringement and unfair competition; (d) a declaration that Squeegee Squad properly and legally terminated the Franchise Agreement due to Defendants' breaches of the Franchise Agreement; and (e) an award of attorney's fees and costs as provided for in the Franchise Agreement.

## PARTIES

10.    Squeegee Squad, Inc. is a corporation organized under the laws of the state of Minnesota with its principal place of business located at 8147 Maple Lane N, Maple Grove, Minnesota 55311.

11.    Jack & Joe's Management Company is a corporation organized under the laws of the state of Minnesota with its principal place of business located at 7750 Ranchview Lane N., Maple Grove, MN 55311.

12.    Defendant Eric Bernardin is a natural person who resides at 3130 SW 27th Ave., Apt. 17, Miami, Florida 33133.

13.    EB Window Cleaning LLC is a limited liability company organized under the laws of the state of Florida with its principal place of business located at 3130 SW 27th Ave., Apt. 17, Miami, Florida 33133. Eric Bernardin is the lone member of EB Window Cleaning LLC.

## JURISDICTION

14.    This Court has subject matter jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, as well as 15 U.S.C. §§ 1116(a), 1121, and 28 U.S.C. §§ 1331, 1332, 1338, and 1367. The action is between citizens of different states and the amount in controversy exceeds the sum of $75,000.

15.     This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claim that they form part of the same case or controversy and derive from a common nucleus of operative facts.

16.     This Court has jurisdiction over Defendants because they irrevocably submitted to jurisdiction in the Franchise Agreement from which this dispute arises, agreeing that "[a]ny cause of action, claim, suit or demand allegedly arising from or related to the terms of this Agreement or the relationship of the parties that is not subject to arbitration under Article 21 hereof, shall be brought in the Federal District Court for the District of Minnesota or in Hennepin County District Court, Minneapolis, Minnesota. Both parties hereto irrevocably submit themselves to, and consent to, the jurisdiction of such courts." Franchise Agreement § 22.1.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims against Defendants occurred in this District. In addition, the Defendants entered into contracts by which they agreed to venue here. Under Section 22.1 of the Franchise Agreement, Defendants agreed to submit to the venue of this Court. Additionally, pursuant to a Personal Guaranty, Defendant Eric Bernardin agreed to be personally bound by any provisions of the Franchise Agreement, which includes those related to forum and venue.

## FACTS

### A. The Squeegee Squad Franchise System and Trademarks

18.     Squeegee Squad has developed a proprietary system—the Squeegee Squad System—for the establishment of a series of standards, specifications, marketing, training, and operations for the successful management of businesses that perform window cleaning and related building maintenance and cleaning services. Through the execution of franchise agreements,

4

Squeegee Squad authorizes others to use the Squeegee Squad System, including, but not limited to, proprietary information, knowledge and know-how, systems and procedures, personnel policies, information about customers, specifications for equipment and vehicles, marketing, accounting, and bookkeeping ("Confidential Information"). There are dozens of Squeegee Squad franchises located throughout the United States.

19.      In addition, Squeegee Squad authorizes franchisees to use its trade name and trademarks (the "Marks"), and to benefit from the goodwill associated with such Marks, including the federally registered Squeegee Mark Nos. 3057752, 7677282, and 7677283. The Marks have been used continuously in the United States and/or have been registered since as early as 2005 to identify the Squeegee Squad brand and System and the products and services associated with that system in interstate commerce. The Marks have been widely advertised and promoted by Squeegee Squad over a period of years. As a result of extensive advertising and promotion of the products and services associated with the Marks, the public has come to know and recognize the Marks and to associate them exclusively with the products and services offered by Squeegee Squad System franchisees.

**B. Key Terms of the Franchise Agreement and Personal Guaranty Agreement**

20.      Pursuant to the Franchise Agreement, Defendants agreed to operate, for a period of fifteen years, commencing on October 13, 2023, a Squeegee Squad franchise using the Marks and Confidential Information in a territory in and around Miami, Florida.

21.      Pursuant to Section 8.4 of the Franchise Agreement, Defendants acknowledged that as participants in the Squeegee Squad System, "JJFI will be disclosing and providing to the Franchisee certain confidential and proprietary information concerning the Business System and the procedures, operations and data used in connection with the Business System" and that

"Confidential Information" includes "[a]ny and all information, knowledge and know-how including, without limitation, drawings, client lists, materials, brochures, marketing materials, equipment, technology, methods, procedures, specifications, techniques, teaching methods, computer software programs, systems and other data which JJFI copyrights or designates as confidential or proprietary."

22.     Defendants agreed that they would not compete during or after the term of the Franchise Agreement.

23.     Specifically, pursuant to Section 19.1 of the Franchise Agreement, Defendants agreed that during the term of the Agreement that they "will not":

> on their own account or as an employee, agent, consultant, partner, officer, director, governor, manager or owner of any other person, firm, entity, partnership, limited liability company or corporation, own, operate, lease, franchise, conduct, engage in, be connected with, have any interest in or assist any person or entity engaged in any business that is in any way competitive with or similar to the Squeegee Squad Businesses operated by JJFI, any entity affiliated with JJFI or JJFI's franchisees, except with the prior written consent of JJFI.

Franchise Agreement § 19.1.

24.     Defendants agreed that for a period of two years after termination of the Franchise Agreement, they would not:

> on their own account or as an employee, independent contractor, agent, consultant, partner, officer, director, governor, manager or owner of any other person, firm, entity, partnership, limited liability company or corporation:
>
> (A) Own, operate, lease, franchise, conduct, engage in, be connected with, have any interest in or assist any person or entity engaged in any or other related business that is in any way competitive with (including, but not limited to, over the internet) or similar to the Squeegee Squad Business or a facet thereof, which is located (i) within the Territory, (ii) within the territories of any other Squeegee Squad business operated by JJFI or any of its affiliates or franchisees, (iii) within 10 miles of any of the areas described in (i) or (ii) above, or (iv) over the internet;
>
> (B) Divert or attempt to divert any existing or potential business or customers of JJFI, any JJFI affiliate or any Squeegee Squad franchisee;

6

(C) Employ, or seek to employ, any person who is employed by JJFI or an affiliate of JJFI or by another Squeegee Squad franchisee, or induce or attempt to induce any such person to leave such employment; or

(D) Solicit or perform residential and/or commercial window cleaning or other Squeegee Squad services for any customer for whom or which such services was performed by the Franchisee under the Squeegee Squad service marks, trademarks, and Business System during the term of this Agreement.

Franchise Agreement § 19.2.

25.     They further agreed that the prohibitions identified in Section 19 were reasonable, establishing in relevant part:

(i) that the time, the internet and the geographical limitations set forth in this provision are reasonable and necessary to protect JJFI and JJFI's franchisees if this Agreement expires or is terminated by either party for any reason, (ii) that the time period expressed above shall be extended by an amount of time equal to the time the Franchisee, the holders of all Ownership Interests in the Franchisee or the Personal Guarantors are in breach of the provisions of this Article 19.2, and (iii) that this covenant not to compete is necessary to permit JJFI the opportunity to resell and/or develop a new Squeegee Squad Business at or in the area near the Territory.

Franchise Agreement § 19.2.

26.     Defendants also agreed "the failure on the part of a single franchisee to comply with the terms of its franchise agreement could cause irreparable damage to JJFI and/or to some or all other franchisees of JJFI." Franchise Agreement § 21.5.

27.     Defendants also agreed that Squeegee Squad has the right to terminate the Franchise Agreement immediately, upon notice, without an opportunity to cure, if Franchise failed to comply with an audit request. Franchise Agreement §§ 13.5, 16.4(E).

28.     Section 4.2 of the Franchise Agreement establishes that "its right to use the Marks and the Business System applies only to the Franchisee's Squeegee Squad Business within the Territory and such rights will exist only so long as the Franchisee fully performs and complies with all of the conditions, terms and covenants of this Agreement."

7

29.     In the event of termination, Defendants agreed that "Franchisee's right to use the service mark Squeegee Squad and the other Marks and the Business System will terminate immediately and revert back to JJFI" and that Franchisee will "(A) within 5 days after expiration or termination, pay all Continuing Fees, Advertising Fees, and other amounts due and owing to JJFI or its affiliates under this Agreement, or any other contract, promissory note or other obligation payable by the Franchisee to JJFI or its affiliates; (B) immediately return to JJFI by first class prepaid United States mail all copies of the Manual, advertising materials and all other printed materials containing the Marks or pertaining to the Franchisee's Squeegee Squad Business; (C) immediately inform its suppliers in writing of the termination of the Franchisee's rights to operate a franchised Squeegee Squad; (D) immediately discontinue use of all confidential and proprietary information; (E) immediately deliver all customer lists and records to JJFI; (F) cease participation in any Squeegee Squad website; (G) discontinue use of the Marks in any online communications; (H) alter its business as specified in Article 18.2; (I) comply with the post-term covenant not to compete described in Article 19.2 and all other applicable post-term obligations; and (J) not use any of the Marks in a derogatory, negative, or other inappropriate manner in any media, including but not limited to, print or electronic media." Franchise Agreement § 18.1.

30.     Defendants also agreed that upon termination, Squeegee Squad has the right to assignment of all telephone numbers associated with the Marks and franchised business. Franchise Agreement § 18.1.

31.     The Franchise Agreement also requires Defendants to pay attorneys' fees, establishing incurred in connection with enforcing its rights, including obtaining an injunction. Franchise Agreement § 21.5.

32.    In conjunction with the Franchise Agreement, Defendant Eric Bernardin also executed a Personal Guaranty, pursuant to which he agreed that, among other things, he would:

> agree to be personally bound by each and every condition and term contained in the Agreements and agree that this PERSONAL GUARANTY should be construed as though the undersigned and each of them executed an Agreement containing the identical terms and conditions of the Agreements.

Personal Guaranty of the Franchise Agreement and Promissory Note.

### C.  The Franchise Agreement was terminated for Defendants' material omissions from and failure to comply with audit requests

33.    In and around March 2025, Squeegee Squad learned that Defendants were performing jobs outside of the territory without reporting revenues or sharing revenues with other franchisees, pursuant to the Squeegee Squad's inter-territory referral policies and requirements of Exhibit D of the Franchise Agreement (regarding inter-territory referrals and jobs).

34.    In response, on March 6, 2025, Squeegee Squad sent an Audit Letter that demanded financial information related to inter-territory jobs performed by Defendants. A copy of the March 6, 2026 Audit Letter is attached as **Exhibit B**.

35.    Defendants' response to the Audit Letter included material omissions and failed to provide any information at all regarding certain jobs performed in other territories.

36.    Counsel for Squeegee Squad requested additional information regarding unreported inter-territory jobs and Defendants failed to provide such information. On April 10, 2025, Squeegee Squad issued a second Notice of Audit.

37.    Defendants' material omissions and acts of noncompliance with the audit included its failure to report that Defendants performed a significant multi-week inter-territory job (outside of Defendants' territory) in Naples, Florida in September and October, 2024.

38.    Squeegee Squad learned about this inter-territory job from a written statement made by Defendants' then-employee.

39.    As a result of Defendants failures to comply with the audit, and material omissions, Squeegee Squad terminated the Franchise Agreement, pursuant to its express rights, in a Notice of Termination dated June 13, 2025. A copy of the Notice of Termination is attached as **Exhibit C**.

**D.  Defendants Have Failed to Comply with Post-Termination Obligations**

40.    Since the termination, Defendants have violated various post-termination obligations.

41.    Defendants have refused to transfer and assign the telephone numbers associated with the franchised business and trademarks in violation of the express obligation to transfer the phone numbers, including the phone number (942) 142-7039, and the phone number that has been used in direct connection with franchise marketing and advertising using the Marks, as follows:



42.    On information and belief, Defendants' ongoing use of these phone numbers has caused or is likely to cause customer confusion regarding the Squeegee Squad Marks.

43.    Defendants also used a vehicle bearing the Squeegee Squad Marks while operating the franchised business.

44.    The Franchise Agreement expressly requires deidentification of the vehicle, stating in relevant part that "[i]f this Agreement expires or is terminated for any reason or if the Squeegee Squad Business office ever ceases to be used as a Squeegee Squad Business, then the Franchisee

10

will, at its expense, remove the Squeegee Squad signs and decals from, and change the colors and décor of, all vehicles and other equipment and the business office used by the Franchisee in its Squeegee Squad Business." Franchise Agreement § 18.2.

45.     Defendants have not provided any indication that they have de-identified the vehicle.

46.     Defendants have also solicited and diverted former customers, including with the apparent intention to provide false and leading information about Squeegee Squad and its business.

47.     Defendants have, for example, provided new job estimates to customers of the former franchised business that intentionally doubled the prices of the services. On information and belief, these incorrect and inflated estimates were intended to mislead customers, divert them away from Squeegee Squad, and create a negative impression about Squeegee Squad and its Marks and the quality and price of its services.

48.     Squeegee Squad also recently learned that Defendants forwarded numerous emails from their Squeegee Squad franchised business account to a private email (windowcleaningeb@gmail.com) and that they have been forwarding such emails since as early as February 2025.

49.     On information and belief, Defendants forwarded emails to Mr. Bernardin's personal account to support acts of competition with the franchised business in violation of the Franchise Agreement.

**E.  Defendants have defamed Squeegee Squad**

50.     Defendants have also engaged in various recent and ongoing acts to defame Squeegee Squad, including within the former franchise territory.

11

51.    Defendants have engineered a coordinated campaign to publish false and negative reviews on the former franchised businesses Google Review website. These reviews have all been posted after the date of termination, have all been negative, and all bear no relation to any recent job(s) performed by the franchised business.

52.    Many if not all of the persons who have published false and negative reviews are affiliated with Defendant Eric Bernardin and are, among other things, "friends" with him on the social media website Facebook.

53.    A Christopher Gassant left the following 1-star negative review during the week of June 23, 2025 *after* the franchise was terminated:



54.    Christopher Gassant is also a Facebook "friend" of Eric Bernardin:



55.     An Alen Paniagua left a 1 star review during the week of June 23, 2025 *after* the franchise was terminated:



56.     Alen Paniagua is also a Facebook "friend" of Eric Bernardin:



57.     A James Labardie left a 1 star negative review *after* the franchise was terminated.



58.     James Labardie is also a Facebook friend of Eric Bernardin.



59.     On information and belief, these false and negative statements were published intentionally to mislead and divert customers, to cause customer confusion, and to tarnish and defame Squeegee Squad's Marks and business reputation.

60.     In response, on June 29, 2025, counsel for Squeegee Squad sent a Cease and Desist Letter to counsel for Defendants demanding that they cease making defamatory statements about Squeegee Squad. A copy of the Cease and Desist Letter is attached as **Exhibit D**.

61.     Counsel for Defendants did not deny that Defendants had made defamatory statements, agree to cease and desist from making further statements, or otherwise respond.

**F. Lost Opportunity to refranchise the business**

62.     After termination of Defendants' franchised business, Squeegee Squad identified another franchisee in the system who is interested in and prepared to buy the territory ("Buyer") to operate as a Squeegee Squad franchisee.

63.     The Buyer's efforts to recapture the business and operate in the territory are being delayed, hindered, and harmed by Defendants' ongoing and unlawful interference, competition, and defamatory acts, which they have not agreed to cease.

64.     As a result, Defendants' actions are causing actual and ongoing irreparable harm to Squeegee Squad that requires injunctive relief.

65.     To date, Defendants have not ceased operating their competing business, continue their unauthorized use of Confidential Information, continue their unauthorized use and possession of the telephone number and misuse of the Marks, continue to fail to comply with their post-termination obligations in the Franchise Agreement, and have not agreed to cease and desist from making defamatory remarks.

## COUNT I

**BREACH OF FRANCHISE AGREEMENT AND PERSONAL GUARANTY (FAILURE TO COMPLY WITH POST TERMINATION OBLIGATIONS)**

66.     Squeegee Squad realleges each of the previous allegations as if fully set forth herein.

67.     The Franchise Agreement and Personal Guaranty are lawful and binding contracts.

68.     Defendants have failed to comply with the post-termination obligations set forth in the Franchise Agreement, including by operating a competing business, and continuing to use and refusing to assign/transfer to Squeegee Squad the franchised business's telephone numbers, Squeegee Squad's Marks and Confidential Information. This conduct constitutes material breaches of the Franchise Agreement and Personal Guaranty.

69.     Squeegee Squad has no adequate remedy at law to protect its substantial business and property rights at issue in this lawsuit. The damages from Defendants' failure to comply with the post-termination obligations in the Franchise Agreement are considerable and continuing and thus not capable of ascertainment at this time.

70.     Squeegee Squad is entitled to preliminary and permanent injunctive relief enforcing all post-termination obligations of the Franchise Agreement, preventing Defendants from using the Squeegee Squad's Marks and Confidential Information, and preventing Defendants from operating a competing business in violation of the post-termination non-compete provisions.

71.     As a direct and proximate result of Defendants' actions, Squeegee Squad has suffered and is continuing to suffer irreparable injury and has incurred and is continuing to incur monetary damages, for breaches of the post-termination obligations, in an amount to be proven at trial, plus costs, disbursements, interests, and attorneys' fees, which in any case exceeds $75,000.

**COUNT II**
**BREACH OF FRANCHISE AGREEMENT AND PERSONAL GUARANTY (FAILURE TO COMPLY RESTRICTIVE COVENANTS)**

72.    Squeegee Squad realleges each of the previous allegations as if fully set forth herein.

73.    The Franchise Agreement and Personal Guaranty each contain or incorporate an agreement to not compete with Squeegee Squad and not solicit customers of Squeegee Squad during the term of the Franchise Agreement, and, for a period of two years after the termination of the Franchise Agreement, within certain geographic areas.

74.    Defendants have violated the covenant not to compete by operating or preparing to operate a competitor of Squeegee Squad and franchisees of the Squeegee Squad System. Defendants' competing business provides the same services, from the same location, to the same current and prospective customers as Defendants' Squeegee Squad's franchised business.

75.    Additionally, Defendants have continued to solicit customers of Squeegee Squad, despite agreeing not to do so.

76.    As a direct and proximate result of Defendants' actions, Squeegee Squad has suffered irreparable injury and has incurred monetary damages for breaches of the covenants not to compete in an amount to be proven at trial, plus costs, disbursements, interests, and attorneys' fees, which in any case exceeds $75,000.

## COUNT III
## DECLARATORY JUDGMENT

77.    Squeegee Squad realleges each of the previous allegations as if fully set forth herein.

78.    The Franchise Agreement provides a basis for termination by Squeegee Squad under specific conditions, including for failure to comply with audit requests.

79.    Termination for the above-listed reasons can be completed upon notice to Defendants.

80.    Defendants failed to comply with Squeegee Squad's notice of audit, including by omitting material financial information.

81.    Squeegee Squad provided Defendants notice of the termination of the Franchise Agreement on June 13, 2025.

**COUNT IV**
**BUSINESS DEFAMATION**

82.    Squeegee Squad realleges each of the previous allegations as if fully set forth herein.

83.    After Defendants' business was terminated, Defendants published and/or directed others to publish false and negative statements on the publicly-available Google Review page affiliated with the former/terminated franchised business.

84.    Defendants' actions were performed with knowledge or reckless disregard as to the falsity of the statements which were not made in connection with any services provided by Squeegee Squad.

85.    Defendants actions have caused actual damages and irreparable harm.

86.    As a direct and proximate result of Defendants' actions, Squeegee Squad has suffered irreparable injury and has incurred monetary damages for breaches of the covenants not to compete in an amount to be proven at trial, plus costs, disbursements, interests, and attorneys' fees, which in any case exceeds $75,000.

**COUNT V**
**TRADEMARK INFRINGEMENT**

87.    Squeegee Squad realleges each of the previous allegations as if fully set forth herein.

88.    Squeegee Squad has registered certain of its Marks with the United States Patent and Trademark Office.

89.    Since registering its Marks, Squeegee Squad has extensively advertised its Marks in connection with its products and services.

90.    Defendants do not have any rights to the use of any Marks of Squeegee Squad except in connection with activities authorized by the Franchise Agreement.

91.    Notwithstanding demands by Squeegee Squad that Defendants cease their use of the Marks, Defendants continue to unlawfully use and display the Squeegee Squad Marks.

92.    Defendants' unauthorized use and display of Squeegee Squad's Marks constitutes willful and intentional infringement of the Marks in violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

93.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

94.    Defendants' use in commerce of the Squeegee Squad Marks without the consent of Squeegee Squad is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by or associated with Squeegee Squad.

95.    Squeegee Squad has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined, but in any case exceeds $75,000.

96.     Squeegee Squad has no adequate remedy at law to protect its substantial business and property rights. The damages from Defendants' activities are considerable and continuing and thus not capable of ascertainment at this time.

97.     Squeegee Squad is entitled to preliminary and permanent injunctive relief preventing Defendants from further infringement of the Squeegee Squad Marks, plus costs, disbursements, interest and attorneys' fees.

## COUNT VI
## UNFAIR COMPETITION

98.     Squeegee Squad realleges each of the previous allegations as if fully set forth herein.

99.     Defendants have infringed Squeegee Squad's rights by using and displaying its Mark.

100.    Due to Defendants' infringement and conduct, customers are likely to be confused and induced into patronizing Defendants' competing business in the belief that the goods and services are affiliated, connected, or associated with Squeegee Squad businesses. Customers have been or are likely to be confused as to the sponsorship of the products and services sold by Defendants while they continue to hold themselves out in a manner similar to that of a franchisee of the Squeegee Squad System.

101.    Defendants' actions constitute unfair competition in violation of 15 U.S.C. § 1125(a) and common law.

102.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

103.    Squeegee Squad has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined but in any case exceeds $75,000.

104.    Squeegee Squad has no adequate remedy at law to protect its substantial business and property rights. The damages from Defendants' activities are considerable and continuing and thus not capable of ascertainment at this time.

105.    Squeegee Squad is entitled to preliminary and permanent injunctive relief preventing Defendants' unfair competition, plus costs, disbursements, interest and attorneys' fees.

### **PRAYER FOR RELIEF**

**WHEREFORE, Plaintiffs Jack & Joe's Franchising, Inc. /d/b/a Squeegee Squad and Jack & Joe's Management Company respectfully request the following relief:**

A.  An order for preliminary and permanent injunction directing Defendants, and all others in active concert or participation with them, to immediately cease operating a competing business in violation of the Franchise Agreement;

B.  An order for preliminary and permanent injunction directing Defendants, and all others in active concert or participation with them, to transfer and assign to Squeegee Squad, or its designee, phone numbers used in connection with the former franchised business;

C.  An order for preliminary and permanent injunction directing Defendants, and all others in active concert or participation with them, to immediately cease engaging in any and all acts of defamation regarding Squeegee Squad, the Squeegee Squad System, Squeegee Squad Marks, and/or any Squeegee Squad franchisee;

D.  An order for preliminary and permanent injunction directing Defendants, and all others in active concert or participation with them, to immediately comply with the post-termination

obligations set forth in the Franchise Agreement, including but not limited to the provisions of Section 8.4 of the Franchise Agreement, which prohibits use of the Marks, except in conformance with the purpose of the Franchise Agreement, and to cease using Squeegee Squad's Confidential Information;

E. An order for a preliminary and permanent injunction directing Defendants, and all others in active concert or participation with them, to immediately cease engaging in unfair competition with Squeegee Squad;

F. An order declaring Defendants breached the Franchise Agreement and the Franchise Agreement was properly terminated by Squeegee Squad;

G. An award against Defendants, jointly and severally, for the damages Squeegee Squad has sustained and the profits Defendants have derived as a result of their violations of the Franchise Agreement and Personal Guaranty Agreement;

H. An award against Defendants, jointly and severally, for the damages Squeegee Squad has sustained and the profits Defendants have derived as a result of their violations of the Lanham Act, pursuant to § 35 of the Lanham Act, 15 U.S.C. § 1117;

I. An award against Defendants for treble damages and prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

J. An award against Defendants, jointly and severally, for Squeegee Squad's reasonable costs and expenses, including attorneys' fees, incurred in enforcing the provisions of the Franchise Agreement; and

K. Such other and further relief as the Court deems just and proper.

Dated:  July 3, 2025

**LATHROP GPM LLP**

*/s/ David C. Archer*
David C. Archer (MN #0399150)
3100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 632-3304
Facsimile: (612) 632-407
David.Archer@lathropgpm.com

Frank Sciremammano (pro hac vice forthcoming)
600 New Hampshire Ave NW, Suite 700
Washington, D.C. 20037
Telephone: (202) 295-2232
Frank Sciremammano@lathropgpm.com

**ATTORNEYS FOR PLAINTIFFS JACK & JOE'S
FRANCHISING, INC. d/b/a SQUEEGEE SQUAD AND
JACK AND JACK AND JOE'S MANAGEMENT
COMPANY**