# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| JACK & JOE'S FRANCHISING, INC. d/b/a SQUEEGEE SQUAD; JACK & JOE'S MANAGMENT COMPANY, | No. 25-cv-2776 (KMM/SGE) |
| Plaintiffs and Counter-Defendants, | **ORDER** |
| v. | |
| ERIC BERNADIN, | |
| Defendant and Counter-Plaintiff, | |
| and | |
| EB WINDOW CLEANING LLC, | |
| Defendant. | |

This matter is before the Court on Counter-Defendants Jack & Joe's Franchising, Inc. ("JJFI") and Jack & Joe's Management Company's (collectively "Squeegee Squad") Motion to Dismiss Counter-Plaintiff Eric Bernadin's Counterclaims. (Dkt. 62.) For the reasons discussed below, the Motion is granted in part.

## BACKGROUND

In July 2025, Squeegee Squad initiated this action against Defendant EB Window Cleaning LLC and its owner Mr. Bernadin, alleging that they materially breached the parties' Franchise Agreement and had defamed Squeegee Squad. (*See generally* Dkt. 1.) Mr. Bernadin is a personal guarantor to the Agreement. Squeegee Squad also sought a

preliminary injunction. (Dkt. 8.) In December 2025, after several unsuccessful attempts to settle the matter, Squeegee Squad applied for entry of default as to EB Window Cleaning because it failed to timely respond to the Complaint or secure representation as ordered by the court. (Dkts. 45–46.) In March 2026, this Court issued an Order granting Squeegee Squad's Motion for Preliminary Injunction and enjoined EB Window Cleaning and Mr. Bernadin "from violating the post-termination noncompete provision in the parties' agreement," "engaging in any acts of defamation" against Squeegee Squad, and "from any unauthorized uses of Squeegee Squad's protected trademarks." (Dkt. 49 at 17 ¶ 1.) The Court also ordered EB Window Cleaning and Mr. Bernadin to fulfill all post-termination obligations set forth in the parties' Franchise Agreement. (*Id.*)

Although EB Window Cleaning Company remains unrepresented and in default, Mr. Bernadin has since filed an Answer on his own behalf. (Dkts. 51, 55.) He has also raised four counterclaims against Squeegee Squad: (1) breach of contract; (2) "wrongful termination/ breach of agreement"; (3) "interference with business relationships"; and (4) unjust enrichment. (Dkt. 55 at 1–3.) On April 23, 2026, Squeegee Squad filed the Motion to Dismiss that is presently before the Court. (Dkt. 62.)

## DISCUSSION

Squeegee Squad asserts that all of Mr. Bernadin's counterclaims must be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 69 at 1.) In doing so, Squeegee Squad analyzes Mr. Bernadin's contract-based claims under Minnesota law and his remaining claims under both Florida and Minnesota law. (*Id.* at 12–15.)

2

Before proceeding, the Court notes that it previously engaged in a choice-of-law analysis and applied the substantive laws of Florida to Squeegee Squad's contract claims. (Dkt. 49 at 12 n.8.) For the same reasons articulated in that previous Order, the Court applies Florida law to Mr. Bernadin's breach-of-contract claims here. And, consistent with the analysis that follows later in this Order, the Court concludes that there are no conflicts between Florida or Minnesota law for purposes of addressing his claims for unjust enrichment and tortious interference.

## I.  Legal Standard

To survive a motion to dismiss, a claimant must put forth "sufficient factual allegations to state a claim to relief that is plausible on its face." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quotation omitted). The allegations must "raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Stated otherwise, "[a] complaint states a plausible claim for relief if its 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, courts must assume that all factual allegations are true and grant all reasonable inferences in favor of the nonmoving party. *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1113 (8th Cir. 2024). However, courts "need not accept as true a [claimant's] conclusory allegations or legal conclusions drawn from the facts." *Ingram v. Ark. Dep't of Corr.*, 91 F.4th 924, 927

3

(8th Cir. 2024) (quoting *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019)). In the context of a counterclaim, the Court assumes the allegations contained in it and the Answer are true and makes reasonable inferences in favor of Mr. Bernadin.

## II.    Breach of Contract (Counterclaim 1) and Wrongful Termination/Breach of Agreement[1] (Counterclaim 2)

"To prevail on a breach of contract claim under Florida law, a plaintiff must show '(1) the existence of a contract; (2) a breach of the contract; and (3) causation of damages as a result of the breach.'" *Gent Row, LLC v. Truist Fin. Corp.*, No. 24-10387, 2025 WL 1721485, at *3 (11th Cir. 2025) (per curiam) (quoting *Cole v. Plantation Palms Homeowners Ass'n, Inc.*, 371 So. 3d 413, 415 n.2 (Fla. Dist. Ct. App. 2023)). To plead that Squeegee Squad breached a contract, Mr. Bernadin must allege that he himself "'did all, or substantially all, of the essential things which the contract required' [him] to do unless he . . . was excused from doing those things." *JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co.*, 292 So.3d 500, 508–09 (Fla. Dist. Ct. App. 2020) (quotation omitted). Moreover, to be actionable, a breach must be "material," or "central to the contract." *Id.* at 509. To determine whether a party's conduct "rose to the level of a material breach," a court must "look to the language of the contract and measure the breaching party's shortfall or failure in performance." *Id.* (quotation omitted).

As to Counterclaim One, Mr. Bernadin's claim is not adequately pled. Mr. Bernadin asserts that Squeegee Squad "made representations and agreements regarding referral

---

[1] While pleaded as separate claims, the Court understands both to be claims for breach of contract.

relationships, including that [he] would receive compensation for referrals outside his territory," but "failed to honor these agreements and interfered with [his] ability to benefit from business relationships he developed." (Dkt. 55 at 2.) But his pleading lacks specific allegations about what the relevant "representations and agreements" were, how Squeegee Squad "failed to honor" those agreements, or whether Mr. Bernadin substantially performed his obligations. It is not even clear whether Mr. Bernadin is referencing a breach of the Franchise Agreement itself, or a breach of other agreements and understandings between the parties. Therefore, Count One must be dismissed for failure to state a plausible claim to relief. *See Smithrud*, 746 F.3d at 397.

Counterclaim Two must be dismissed for the same reasons. Mr. Bernadin alleges that Squeegee Squad "terminated [the parties'] franchise relationship" in a manner that was "improper and inconsistent with the terms of the agreement and the parties' prior understandings." (Dkt. 55 at 2.) But he fails to specify which terms Squeegee Squad allegedly violated when it terminated the parties' franchise agreement, does not allege that he substantially performed under the agreement, and provides the same conclusory statement as to damages. Therefore, the Court dismisses Counterclaim Two.[2]

---

[2] Squeegee Squad asserts that, although Mr. Bernadin is personal guarantor to the Franchise Agreement, he lacks standing to enforce its terms. At this stage, the Court is not persuaded that this is true. The obligations of the guarantor in the Agreement are numerous, and Squeegee Squad points to no language in the Agreement making clear that Mr. Bernadin is expressly bound to its terms but is in no way a party who can enforce the agreement. Though Squeegee Squad cites cases about outsiders to contracts being unable to enforce their terms, Mr. Bernadin is not a standard outsider to the contract. Indeed, he is a guarantor whose compliance with the Agreement was recently the subject of injunctive relief. Finally, although Squeegee Squad states that courts in Minnesota have held that "personal guarantors to a franchise agreement do not have standing to bring claims under

### III.    Unjust Enrichment (Counterclaim 4)

Ordinarily, the Court would begin with a choice-of-law analysis to determine which state's law applies to Mr. Bernadin's unjust-enrichment claim. However, "[w]here there is no actual conflict between state laws, 'there is no choice of law issue.'" *Gen. Star Indemnity Co. v. Toy Quest Ltd.*, 170 F.4th 664, 669 (8th Cir. 2026) (quoting *Vetter v. Sec. Cont'l Ins. Co.*, 567 N.W.2d 516, 522 (Minn. 1997)).

The laws of Minnesota and Florida both provide that unjust enrichment is an equitable remedy that applies when no enforceable contract governs the parties' relationship. *Futo v. U.S. Bancorp*, 826 F. Supp. 3d 1016, 1037 (D. Minn. 2026) (quoting *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012)); *see also Doral Collision Ctr., Inc. v. Daimler Tr.*, 341 So.3d 424, 430 (Fla. Dist. Ct. App. 2022) (stating "it is well settled that a plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists[]" (quotation omitted)); *see Sherman Hills Homeowners Ass'n, Inc. v. Gibson*, 403 So.3d 1101, 1106 (Fla. Dist. Ct. App. 2025) ("Unjust enrichment is a legal fiction designed to permit recovery by contractual remedy in those cases where there is no contract." (quotation omitted)).

Squeegee Squad argues that Mr. Bernadin's unjust-enrichment claim must fail because a valid contract governs the parties' relationship. But courts routinely allow

---

the franchise agreement," not only does it fail to cite any Minnesota cases, nor Florida cases, but the cases it does cite are not squarely on point. (*See* Dkt. 69 at 5–6.) On this unpersuasive showing, the Court will not conclude at this stage that Mr. Bernadin is entirely foreclosed from suing to enforce the Franchise Agreement.

unjust-enrichment claims that are pled in the alternative to move forward, even if they later prove to be unrecoverable because there is a valid contract that covers the conduct at issue. *See, e.g.*, *Bhatia v. 3M Co.*, 323 F. Supp. 3d 1082, 1100 (D. Minn. 2018) (stating that pleading unjust enrichment in the alternative is "permitted, even if the claims are inconsistent"); *In re Pork Antitrust Litig.*, 781 F. Supp. 3d 758, 885 (D. Minn. 2025) (allowing plaintiffs' unjust-enrichment claim to survive summary judgment where it was pled in the alternative). The Court will apply that rule here. Considering Mr. Bernadin's allegations in light of the applicable standards, which require the Court to not only grant all reasonable inferences in his favor, *see Cole*, 105 F.4th at 1113, but also construe his pro se pleadings liberally, *Solomon v. Petray*, 79 F.3d 777, 787 (8th Cir. 2015), the Court concludes that Mr. Bernadin adequately alleges an unjust-enrichment claim and will allow it to proceed at this stage.

## IV.   Interference with Business Relationships (Counterclaim 3)

Lastly, the Court addresses Mr. Bernadin's tortious-interference claim. As with his unjust-enrichment claim, there is no choice-of-law issue. Relevant here, both Minnesota and Florida law require a party bringing a claim for tortious interference with business relationships to establish "that Defendants wrongfully and without justification interfered with Plaintiff's reasonable expectation of economic advantage or benefit[.]" *Lamminen v. City of Cloquet*, 987 F. Supp. 723, 731 (D. Minn. 1997) (citing *United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 632–33 (Minn. 1982)); *see also Kreizinger v. Schlesinger*, 925 So.2d 431, 433 (Fla. Dist. Ct. App. 2006) (stating that a party bringing a claim for tortious interference with a business relationship "must show . . . an intentional and unjustified

interference with the relationship," among other things).

Mr. Bernadin claims that that he "developed relationships with property managers and clients," and that Squeegee Squad "interfered with" those relationships by "redirecting business and requiring [him] to share contact information[.]" (Dkt. 55 at 2.) But once again, he must provide additional details. He does not allege, for instance, how Squeegee Squad's actions "disrupted [his] business opportunities" or that Squeegee Squad did so wrongfully. *Kreizinger*, 925 So.2d at 433. He does not describe the interference by Squeegee Squad or what relationships were involved. As pled, Mr. Bernadin does not adequately allege the elements of a tortious-interference claim. Therefore, it must also be dismissed.

\* \* \*

In sum, the Court dismisses Counterclaims 1, 2, and 3 without prejudice. *Ellis v. Nike USA, Inc.*, 158 F.4th 932, 935–36 (8th Cir. 2025) (stating that a court "a dismissal under Rule 12(b)(6) . . . can be rendered without prejudice if the court so specifies"); *see also Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012) ("When a district court dismisses an action for failure to state a claim, it may do so with or without prejudice."). In doing so, contrary to Squeegee Squad's request that they be dismissed with prejudice (Dkt. 62 at 1), the Court considers Mr. Bernadin's pro se status. *Miantona v. Wal-Mart Stores, Inc.*, No. 19-cv-98 (DSD/TNL), 2019 WL 3432620, at \*2 (D. Minn. June 28, 2019) ("The Court concludes, given Plaintiff's pro se status, that dismissal without prejudice is appropriate."), *R&R adopted*, 2019 WL 3429090 (D. Minn. July 30, 2019).

Finally, before concluding, the Court addresses Mr. Bernadin's alternative request for leave to amend. (Dkt. 61 at 1.) Mr. Bernadin's Response to the Motion to Dismiss

includes an attachment that is labeled as an "Amended Answer and Counterclaim." (Dkt. 61-1.) Notably, it does not remedy the defects identified in Squeegee Squad's Motion or set forth any additional allegations. Instead, in the amendment, Mr. Bernadin maintains, without any cites to case law or the record, that he has met the Rule 12(b)(6) pleading standard such that his claims should be permitted to proceed to discovery. (*Id.*) It remains unclear how an amendment would change any of the Court's conclusions. Accordingly, the Court denies Mr. Bernadin's request for leave to amend with the Amended Answer he submitted. *See Block v. Toyota Motor Corp.*, 795 F.Supp.2d 880, 886 (D. Minn. 2011) (denying leave to amend "where amendment is futile" because "the proposed amended [pleading] fails to state a claim under the analysis for a Rule 12(b)(6) motion"). However, if Mr. Bernadin seeks leave to amend in light of this Order, the Court will consider such a request.

## ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED THAT**:

1. Counter-Defendant Squeegee Squad's Motion to Dismiss (Dkt. 62) is **GRANTED in part and DENIED in part**;

2. Counter-Plaintiff Eric Bernadin's request for leave to amend is **DENIED** as to the previously proposed Amended Answer and Counterclaim; and

3. Mr. Bernadin's Counterclaims 1–3 are **DISMISSED without prejudice**.

Date: July 31, 2026

*s/Katherine M. Menendez*
Katherine M. Menendez
United States District Judge

9